UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE COX,

       Plaintiff,

                                       File No.  1:12-CV-320

v.

                                       HON. ROBERT HOLMES BELL

BLUE CROSS BLUE SHIELD OF
MICHIGAN; and BLUE CARE
NETWORK OF MICHIGAN,

       Defendants.

_____/

**O P I N I O N**

       This action alleging retaliation under Title VII and the Michigan Elliott-Larsen Civil Rights Act ("ELCRA") is before the Court on Defendants' motion for summary judgment. (Dkt. No.  17.) For the reasons that follow, Defendants' motion will be granted.

**I.**

       Plaintiff Michelle Cox was hired by Blue Cross Blue Shield of Michigan ("BCBSM") in 2005 as a part-time Customer Service Representative.  On October 6, 2009, Plaintiff filed an internal discrimination complaint asserting that Sara Wood, a supervisor, treated Plaintiff differently than other employees with respect to personal cell phone usage at work because Plaintiff is Hispanic.  (Dkt. No. 20, Def. Ex. 9.)  By letter dated December 9, 2009, Mary Driessche, Manager of Labor Relations, notified Plaintiff that the Company had investigated the complaint and found no evidence of discrimination.  (Pl. Ex. 2.)  Driessche assured

Plaintiff, however, that BCBSM was taking steps to reiterate that discrimination will not be tolerated and that no retaliation would take place. (*Id.*)

After Plaintiff filed the internal complaint, her work schedule was changed. Plaintiff was advised that the change was based on Company need, but she thought it was in response to her complaint. (Dkt. No. 26, Pl. Ex. 1, Cox Dep. 97-98.) Subsequently, Human Resources conducted a documented discussion with Plaintiff in connection with a co-worker's complaint that Plaintiff had made defamatory statements about her. (Pl. Ex. 4, EEOC Charge; Pl. Ex. 5, Answ. to Interrog. 11; Def. Ex. 43, Nelson Decl.)

In January 2010, Plaintiff filed a discrimination and retaliation complaint with the EEOC. (Pl. Exs. 3, 4.) BCBSM was made aware of the charge when it received the EEOC's Notice of Charge of Discrimination dated February 17, 2010. (Def. Ex. 36.) On July 9, 2010, the EEOC held a fact-finding conference. (Pl. Ex. 6, EEOC Notice of Fact Finding Conf.)

On August 24, 2010, Plaintiff received her first discipline from BCBSM (verbal warning for tardiness). (Def. Ex. 33.) On September 20, 2010, Plaintiff received her second discipline (verbal warning for poor work performance). (Def. Ex. 34.) On November 22, 2010, Plaintiff received her third discipline (written warning for tardiness). (Def. Ex. 35.)

In March 2011, Plaintiff applied for and was offered a full-time position as Claims Adjudicator at Blue Care Network (BCN). Celeste Hurst, Senior Talent Acquisition Consultant, confirmed Plaintiff's new position in a March 22, 2011, letter. (Pl. Ex. 8,

2

03/22/11 Letter.)  The letter explained that the position was a lateral transfer with the same hourly salary, but that Plaintiff would have a new tenure period of 12 months, her review date would be adjusted one year from the effective date to March 31, 2012, and her union seniority unit would be 0000.  (Pl. Ex. 8; Cox Dep. 122; Def. Ex. 41, Hurst Decl. ¶ 12.)  In a subsequent email, Hurst clarified that Plaintiff's service date would transfer to BCN for purposes of pension, 401k, and benefit accrual, but that she would lose her BCBSM seniority in the Union and begin a new BCN seniority date effective April 2, 2011.  (Def. Ex. 16, 03/25/2011 Email; Hurst Decl. ¶ 12.)

Although Plaintiff applied for the job from the BCBSM internal company website, the Master Labor Agreement between BCN and the UAW provided that she would be treated as an external candidate.  (Hurst Decl. ¶¶ 4, 5, 10.)  As such, she was a probationary at-will employee for her first ninety days.  When Plaintiff was hired by BCN she was still a member of UAW Local 2145, the same Union that she had been in at BCBSM, but her employment was governed by a different labor agreement.  (Cox Dep. 122; Def. Ex. 31, BCBSM/UAW MLA; Def. Ex. 32, BCN/UAW CBA.)  The collective bargaining agreement between BCN and the UAW required Plaintiff to complete a ninety-day probationary period before gaining union seniority.[1]  (BCN/UAW CBA ¶ 8.2; Hurst Decl. ¶ 11.)

---

[1]The Collective Bargaining Agreement between Blue Care Network and the UAW provides that "[e]mployees with seniority shall not be disciplined or discharged except for cause."  (Def. Ex. 40, BCN-UAW CBA § 9.1.)  However, the CBA further provides that "[d]uring the first ninety (90) calendar days, a newly hired employee shall be considered as (continued...)

As a new hire at BCN, Plaintiff was required to complete mandatory training in order to learn the duties of her new position as a Claims Adjudicator.  (Def. Ex. 29, Mayberry Decl. ¶ 6.)  On May 6, 2011, Claims Supervisor Sandy Frampton and Training Supervisor Natasha Sallie advised Plaintiff that her quality testing score of 87.7% for the week was lower than the team average of 94.6%.  (Cox Dep. 145-47; Def. Ex. 22, Training Review; Def. Ex. 27, Email re Quality Scores; Mayberry Decl. ¶ 15.)  During the training period, Claims Manager Karen Mayberry received additional communications from other supervisors that were critical of Plaintiff's conduct and attitude during training.   (Def. Exs. 21, 24-26; Mayberry Decl. ¶¶ 9-14.)

Mayberry made the decision to terminate Plaintiff from BCN effective June 1, 2011, during Plaintiff's probationary period, for inappropriate conduct and ongoing performance issues.  (Answ. to Interrog 11; Driessche Decl. 14.)   Frampton also recommended termination. (Answ. to Interrog. 11.) BCN Director Jane Schafer approved the termination. (*Id.*) The same human resources department served both BCBSM and its subsidiary, BCN. Employee Labor Relations ("ELR") Manager Mary Driessche and ELR Representative Tracy Nelson participated in the termination, and ELR Director David Barnes approved the decision to terminate.  (*Id.*)  Driessche's approval of Mayberry's decision to terminate was

---

[1](...continued)
probationary, and during such time have no seniority." (Dkt. No.  23, Def. Ex. 32, BCN-UAW CBA § 8.2.)  "The termination of any employee who has not successfully completed their probationary period shall not be subject to the grievance or arbitration provisions of this Agreement . . . ."  (*Id.*)

based on the information Mayberry provided about Plaintiff's failure to demonstrate appropriate conduct during her probationary period.  (Driessche Decl. ¶ 16.)

Plaintiff filed a Title VII and ELCRA retaliation claim against her employers, BCBSM and BCN.  Defendants have filed a motion for summary judgment.

## II.

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  If Defendant carries its burden of showing there is an absence of evidence to support a claim, Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In considering a motion for summary judgment, "the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)).  Nevertheless, the mere existence of a scintilla of evidence in support of  Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  The proper inquiry is whether

the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

## III.

Defendants move for summary judgment on Plaintiff's Title VII and ELCRA retaliation claims. To make out a prima facie case of retaliation under Title VII, Plaintiff must show: (1) she engaged in a protected activity under Title VII, (2) the exercise of protected rights was known by her employer, (3) her employer took an adverse employment action against her, and (4) there was a causal connection between the adverse employment action and the protected activity. *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013) (citing *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 995-96 (6th Cir. 2009)). A prima facie case of retaliation requires that all four elements be satisfied. *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 676 (6th Cir. 2013), *reh'g denied* (Apr. 12, 2013). Accordingly, summary judgment in favor of Defendants is appropriate if Plaintiff fails to meet any one element of her prima facie case. *See id.*

The elements of a prima facie case of retaliation under the ELCRA are the same. *See Garg v. Macomb Cnty. Cmty. Mental Health Servs.*, 696 N.W.2d 646, 653 (Mich. 2005) (quoting *DeFlaviis v. Lord & Taylor, Inc.*, 566 N.W.2d 661, 663 (Mich. Ct. App. 1997)). Because the ELCRA analysis is identical to the Title VII analysis, the Court's Title VII retaliation analysis applies equally to Plaintiff's ELCRA claim. *See Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 472 (6th Cir. 2012).

6

## A. RETALIATION BY BCBSM

Defendants contend that Plaintiff cannot make out a retaliation claim against BCBSM because she cannot show either an adverse employment action or causation between her exercise of protected rights and the alleged adverse actions.

### 1. Adverse Employment Action

In response to Defendants' motion for summary judgment, Plaintiff contends that BCBSM took adverse action against her by subjecting her to three disciplinary actions in the fall of 2010.

Defendant contends that Plaintiff cannot claim that the 2010 disciplines were adverse actions because they do not constitute materially adverse employment actions and because Plaintiff did not refer to these disciplines in her First Amended Complaint.[2]

According to Defendants, these verbal and written warnings are insufficient to constitute adverse employment actions because Plaintiff did not suffer any loss in pay or benefits or any other materially adverse change in the terms and conditions of her employment as a result of receiving the warnings. *See McMillian v. Potter*, 130 F. App'x

---

[2]The only arguably adverse action mentioned in Plaintiff's complaint regarding her employment at BCBSM was the "discipline" she received in the fall of 2009 for making statements about a co-worker. (Dkt. No. 3, Am. Compl. ¶¶ 10-12.) Plaintiff does not rely on this action as evidence of an adverse action in response to Defendants' summary judgment motion. Based on the evidence developed in this case, it is now clear that the "discipline" in the fall of 2009 was a documented discussion for the purpose of counseling and was not considered a disciplinary action. (Nelson Decl. ¶ 7; Answ. to Interrog. 17.) Plaintiff recognizes as much based on her argument that her September 2010 discipline was the first discipline she received in her first five years at BCBSM. (Dkt. No. 26, Pl. Resp. 3.)

7

793, 797 (6th Cir. 2005) (holding, in a Title VII sex discrimination and FMLA retaliation case, that "proposed letter of warning in lieu of suspension cannot meet the definition of an adverse employment action"); *Campbell v. Univ. of Akron*, 211 F. App'x 333, 343 n.5 (6th Cir. 2006) (citing *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 648 (7th Cir. 2005), for the proposition that written warnings were not adverse employment actions for either discrimination or retaliation purposes).

This Court is mindful that "a plaintiff's burden of establishing a materially adverse employment action is less onerous in the retaliation context than in the anti-discrimination context." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 595-96 (6th Cir. 2007) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "A materially adverse employment action in the retaliation context consists of any action that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Burlington N.*, 548 U.S. at 68.)

The Master Labor Agreement ("MLA") between BCBSM and the UAW provided for progressive discipline. (Dkt. No. 23, Def. Ex. 31, BCBSM-UAW MLA § 9.3.) Viewing the evidence in the light most favorable to Plaintiff, the Court is satisfied that there is at least a question of fact as to whether the receipt of warnings under a progressive discipline system would dissuade a reasonable worker from making or supporting a charge of discrimination.

Defendants contend that even if the disciplines are adverse actions, Plaintiff should be barred from asserting for the first time in response to Defendants' motion for summary

judgment that BCBSM retaliated against her by issuing the disciplines. A plaintiff cannot raise a new claim in response to a summary judgment motion because to do so would subject the defendant to an unfair surprise. *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005). *Tucker*, however, was concerned with the raising of legal claims at the summary judgment stage. *Id.* Plaintiff contends that she has not raised a new legal claim; her legal claim has always been retaliation. She contends that she has merely articulated additional facts in support of that claim, which is consistent with notice pleading requirements under the Federal Rules.

Although Plaintiff has not raised a new legal claim, Plaintiff was questioned about retaliatory actions by BCBSM at her deposition and failed to disclose that she would be relying on the fall 2010 disciplines as evidence of adverse employment actions. Plaintiff has offered no explanation or excuse for her failure to give Defendants notice of this theory during the course of discovery. Defendants have undoubtedly been prejudiced by Plaintiff's failure to put them on notice of the actions Plaintiff now claims were retaliatory because they were precluded from questioning Plaintiff about the disciplines. Nevertheless, for purposes of this motion, the Court will consider the fall 2010 disciplines as evidence of retaliation.

2. <u>Causal Connection</u>

Assuming the three disciplines in the fall of 2010 were adverse employment actions, the Court must still consider whether Plaintiff has presented evidence of a causal connection between the adverse employment actions and the protected activity. For purposes of

9

establishing a causal connection, Plaintiff relies solely on the proximity in time between the disciplines and the EEOC fact-finding hearing.

"'In order to establish a causal connection between the protected conduct and the adverse action, plaintiff must produce enough evidence of a retaliatory motive such that a reasonable juror could conclude that the [adverse employment action] would not have occurred but for his engagement in protected activity.'" *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 305 (6th Cir. 2012) (quoting *Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 209 (6th Cir. 2010)). "One way by which a plaintiff can demonstrate a causal connection is to show close temporal proximity between the adverse employment actions and the protected activity." *Taylor*, 703 F.3d at 339 (citing *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 588 (6th Cir. 2009)). If there is a "very close" temporal proximity, no other evidence is needed; if some time has passed, other evidence of retaliatory conduct is required. *Id.* (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)). The Sixth Circuit has "typically found the causal connection element satisfied only where the adverse employment action occurred within a matter of months, or less, of the protected activity." *Dye*, 702 F.3d at 306 (quoting *Dixon v. Gonzales*, 481 F.3d 324, 334 (6th Cir. 2007)); *see, also, Mickey*, 516 F. 3d at 525 (finding temporal proximity alone sufficient where the defendant fired the plaintiff on the same day it learned that the plaintiff had filed an EEOC complaint); *DiCarlo v. Potter*, 358 F.3d 408, 421-22 (6th Cir. 2004) (holding that passage of only 21days between protected activity and adverse action was significant enough to constitute indirect evidence

10

of a causal connection); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004) (finding that where the plaintiff was terminated three months after filing a discrimination charge, the temporal proximity was "significant enough to constitute sufficient evidence of a causal connection"). Temporal proximity is measured from the date that the employer first learns of the protected activity. *Mickey*, 516 F.3d at 525.

Plaintiff has not shown a significant temporal proximity in this case. BCBSN was aware of Plaintiff's internal and the EEOC charges long before Plaintiff was subjected to her first verbal warning on August 24, 2010. Plaintiff filed her internal discrimination complaint more than ten months before the verbal warning, and BCBSN was notified of the EEOC charge more than six months before her first verbal warning. Because the temporal proximity between Plaintiff's protected conduct and the adverse employment action is not close, the temporal proximity is not sufficient, on its own, to show a causal connection between Plaintiff's protected activity and her discipline.

Plaintiff has not presented additional evidence sufficient to raise an inference that her protected activity was the likely reason for the adverse action. *See Fuhr*, 710 F.3d at 675 ("A causal connection is established when a plaintiff proffers 'evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action.'" (quoting *Upshaw*, 576 F.3d at 588). Plaintiff has not presented any evidence regarding the circumstances of the verbal and written warnings sufficient to raise an inference that they were not justified by her behavior and were more likely to have been the result of her protected activity.

11

Because Plaintiff has failed to show a causal connection between her protected activity and any adverse action by BCBSM, she has failed to make out a prima facie case of retaliation against BCBSM.

## B. RETALIATION BY BCN

Defendant contends that Plaintiff cannot make out a prima facie case of retaliation against BCN because she cannot show either knowledge of protected activity or causation between her exercise of protected rights and her termination.

### 1. Knowledge of Protected Activity

In order to satisfy the knowledge prong of her prima facie case, Plaintiff must produce evidence sufficient to establish that the individuals who took the adverse employment action knew of her protected activity. *Mulhall v. Ashcroft*, 287 F.3d 543, 552 (6th Cir. 2002). In making this determination, the Court considers the knowledge and motive of those who were meaningfully involved in or influenced the decision to terminate. *See Wells v. New Cherokee Corp.*, 58 F.3d 233, 238 (6th Cir. 1995) ("[C]ourts must consider as probative evidence any statements made by those individuals who are in fact meaningfully involved in the decision to terminate an employee."); *Arendale v. City of Memphis*, 519 F.3d 587, 604 n.13 (6th Cir. 2008) ("When an adverse . . . decision is made by a supervisor who lacks impermissible bias, but that supervisor was influenced by another individual who was motivated by such bias, this Court has held that the employer may be held liable under a 'rubber-stamp' or 'cat's paw' theory of liability.").

12

Plaintiff filed her internal discrimination complaint and her EEOC discrimination and retaliation charges while she was employed at BCBSM. Plaintiff has not identified any protected activity that she engaged in while she was employed at BCN. Plaintiff asserts, however, that there is an issue of fact as to whether her exercise of protected rights was known by her employer because Driessche and Nelson of the BCBSM Employee Labor Relations Department, who were aware of Plaintiff's protected activities, participated in Plaintiff's termination. (Answ. to Interrog. 11.) Plaintiff also asserts that Nelson, who had been involved in the documented discussion and the EEOC hearing, had treated her disrespectfully. (Cox Dep. 176.)

Although Driessche and Nelson's participation in Plaintiff's termination may, on first blush, suggest that knowledge of Plaintiff's protected activity could have played a part in Plaintiff's termination, a more careful review of the facts demonstrates that these individuals played a secondary and minor role in Plaintiff's termination.

There is no dispute that Karen Mayberry, Claims Manager in BCN's Claims Adjudication Department, the same individual who hired Plaintiff as a Claims Adjudicator at BCN, also made the recommendation to terminate Plaintiff's employment. (Answ. to Interrog 11; Driessche Decl. 14; Def. Ex. 29, Mayberry Decl. ¶¶ 2, 3, 16.) Mayberry determined, based on her assessment of Plaintiff's performance during training, that Plaintiff failed to demonstrate acceptable conduct during her probationary period, as evidenced by Plaintiff's failure to release claims for payment on a timely basis, Plaintiff's scoring the

13

lowest of anyone in the training class, Plaintiff's failure to take ownership for her shortcomings, Plaintiff's misrepresentation of her supervisors' statements regarding time off, Plaintiff's unprofessional conduct, and Plaintiff's lack of engagement. (Mayberry Decl. ¶¶ 8-16; Def. Ex. 28, Discipline Rpt.) Mayberry had no personal knowledge, prior to the filing of this lawsuit, that Plaintiff had previously filed an EEOC charge or an internal complaint while employed at BCBSM. (Mayberry Decl. ¶ 18.)

Driessche has explained that her approval of Plaintiff's termination was based on the information provided by Mayberry, and was not based on Plaintiff's civil rights complaints. (Driessche Decl. ¶ 16.) Nelson has explained that she did not make the decision to terminate Plaintiff; she merely provided human resources support to Mayberry to ensure compliance with Company policies and procedures and the Master Labor Agreement. (Def. Ex. 43, Nelson Decl. ¶ 10.)

Plaintiff has not challenged the evidence that Mayberry made the recommendation that Plaintiff be terminated. Neither has Plaintiff challenged the evidence that when Mayberry made the recommendation, she had no personal knowledge that Plaintiff had engaged in protected activity while at BCBSM.

Plaintiff has raised questions of fact regarding some of Defendants' evidence, such as whether she filed her nails, paid attention, or questioned authority during training, and what she was told about vacations and her probationary status at BCN. (Cox. Dep. 113-122, 133-34.) However, Plaintiff has not presented a material issue of fact for trial because none

of this evidence challenges Defendants' evidence that those responsible for terminating Plaintiff's employment at BCN had no knowledge of Plaintiff's protected activity while at BCBSM.

2. Causal Connection

Even if the Court were to assume that Driessche and Nelson's knowledge of Plaintiff's protected activity was sufficient to make out the knowledge component of the prima facie case, Defendants contend that they are nevertheless entitled to summary judgment because Plaintiff cannot show that there is a causal connection between her protected activity at BCBSM and her termination from BCN.

To make out her prima facie case of retaliation, Plaintiff must show not only that the decision makers knew about her prior protected activity, but that such knowledge weighed into the decision to terminate her employment. *See Dye*, 702 F.3d at 305 (requiring evidence from which a reasonable juror could conclude that the adverse employment action would not have occurred but for the plaintiff's protected activity).

Plaintiff has failed to show a causal connection between her protected activity and her termination. Plaintiff cannot rely on temporal proximity because more than fifteen months had elapsed between Defendants' notification of Plaintiff's EEOC charge in February 2010 and Plaintiff's termination in June 2011. *See Dye*, 702 F.3d at 306 (noting that temporal proximity of a few months or less is typically required to satisfy the causal connection element). Moreover, Plaintiff was offered a full-time position at BCN after she filed her

EEOC charge, which tends to show either that BCN did not know about Plaintiff's prior protected activity or that it was not concerned about Plaintiff's prior protected activity.

Plaintiff responds to Defendants' argument regarding the lack of a causal connection by asserting that Driessche and Nelson wanted to terminate Plaintiff, so they arranged for her to be hired at BCN over six other applicants with greater knowledge, experience, and seniority, so that Plaintiff would be in a probationary position where she had no protection and could be terminated without cause. (Cox Dep. 170-76.)

Plaintiff's argument is wholly speculative. There are no facts to support such a conspiracy theory. Plaintiff testified that she made the decision on her own to apply for a job at BCN. (Cox Dep. 105.) No one from BCBSM told her she had to apply for the BCN position, or that she would be fired from BCBSM if she did not. (Cox Dep. 105-06; 170-71.) Plaintiff has no personal knowledge that the six individuals she identified were more qualified for the BCN position. In fact, the only competent evidence on this issue reflects that Plaintiff was hired by BCN because she was the most qualified candidate for the position. (Def. Ex. 41, Hurst Decl. ¶ 6.) Three of the individuals Plaintiff named were not offered the position because they did not score as high as Plaintiff, one was not offered the position because she exceeded educational job requirements, and the last two were not considered for the position because they did not apply for it. (Hurst Decl. ¶¶ 7-9.) Plaintiff's conspiracy theory also ignores the uncontroverted evidence that Mayberry made the decision to hire Plaintiff at BCN, and that this decision, as well as the decision to terminate her, were

not influenced in any way by Driessche, Nelson, or anyone else at BCBSM.  (Mayberry Decl. ¶ 3; Def. Ex. 42, Mayberry Supp. Decl. ¶¶ 5, 6; Nelson Decl. ¶ 8.)

 Finally, Plaintiff contends that by terminating her rather than reinstating her in her prior position at BCBSM, Defendants violated the collective bargaining agreement.  Section 8.14.4 of the BCN-UAW collective bargaining agreement provides that "[i]f the employee is not performing in a satisfactory and efficient manner during the probationary period, the Company shall return the employee to their former Job Title at the employee's former rate of pay and/or place in a vacant position applicable to former wage and skill level."  (Pl Ex. 9; Def. Ex. 32.)  Contrary to Plaintiff's contentions, she was not entitled to reinstatement under the collective bargaining agreement.  As discussed above, Plaintiff's prior position at BCBSM and her last position at BCN were governed by two separate labor agreements.  Plaintiff had no former job at BCN that was governed by the collective bargaining agreement, and the BCN collective bargaining agreement did not entitle Plaintiff to reinstatement to her former position at BCBSM that was covered by a different collective bargaining agreement.  Accordingly, Defendants' failure to reinstate Plaintiff in her prior position at BCBSM is not evidence of a retaliatory motive.

 Because Plaintiff has failed to show knowledge or a causal connection between her protected activity and her termination from BCN, she has failed to make out a prima facie case of retaliation against BCN.

**IV.**

Plaintiff has failed to make out a prima facie case of retaliation against either BCBSM or BCN.  Accordingly, Defendants' motion for summary judgment will be granted and this action will be dismissed in its entirety.

An order and judgment consistent with this opinion will be entered.


Dated: <u>May 1, 2013</u>                        <u>/s/ Robert Holmes Bell</u>
                                                 ROBERT HOLMES BELL
                                                 UNITED STATES DISTRICT JUDGE

18